[No. 6847.  Decided January 20, 1908.]

RICHARD GREENWOOD, *Appellant,* v. D. C. CORBIN, *Respondent.*[1]

TROVER AND CONVERSION—EVIDENCE—ADMISSIBILITY. In an action of trover for the value of property sold under attachment against a third person, evidence as to the merits of the attachment suit is irrelevant.

SAME—EVIDENCE OF PLAINTIFF'S OWNERSHIP—SUFFICIENCY. In an action for the conversion of a team, harness, wagon, and tools, under attachment proceedings against plaintiff's father, the evidence is sufficient to show ownership in the plaintiff, and it was error to dismiss the action, where it appears from uncontradicted evidence that one of the horses was given to the plaintiff by his father on his twenty-first birthday, and the other articles were purchased by him with his own money, although there was a circumstance indicating a claim of ownership made by the father.

[1]Reported in 93 Pac. 433.

Fraudulent Conveyances—Transfer of Personalty—Place of Sale—What Law Governs. The statutes of Idaho relating to sales have no bearing on the question of the ownership of personal property sold in this state and afterwards removed to Idaho.

Same—Change of Possession—Existing Creditors—Statutes—Construction. Bal. Code, § 4578, providing that no bill of sale for the transfer of personal property shall be valid as to existing creditors, where the property remains in the possession of the vendor, unless the same is recorded, has no application where no debts existed at the time of the sale.

Appeal from a judgment of the superior court for Spokane county, Carey, J., entered February 21, 1907, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, dismissing an action to recover the value of personal property sold under attachment proceedings. Reversed.

*George A. Latimer* and *Dalbert E. Twitchell*, for appellant.

*Allen & Allen*, for respondent.

Dunbar, J.—This action was commenced by Richard Greenwood against D. C. Corbin, to recover the value of the following described personal property, to wit: One blue roan mare named Pete, one light grey mare named Doll, one set of double harness, one double wagon, one half-truck; together with damages for the detention in July, 1906. The cause was tried without a jury, and a decision rendered in favor of the defendant. From the judgment of dismissal, the appeal is taken.

The property above described came into the possession of the defendant through a suit and attachment against the partnership composed of J. I. Greenwood, father of the plaintiff, and Frank Campbell, brought by the defendant in the courts of Idaho. The property was afterwards sold by defendant by an order of the court as perishable property, and the

money therefrom was turned in to the clerk of the said Idaho court.

At the time of said attachment the plaintiff was working for the aforesaid partnership as a teamster. An examination of the record in this case convinces us that the judgment of the court was wrong, not only in relation to some of the technical errors assigned by the appellant, but in consideration of the merits of the case; and the judgment we think was rendered by the lower court under a misapprehension of the law governing the case. The case seems to have been largely tried with reference to the merits of the original controversy between J. I. Greenwood, the father of the plaintiff, and D. C. Corbin, the defendant in this action, and a great deal of testimony was introduced with regard to that controversy; while of course the only question at issue in this case is the ownership of the property by the appellant. The introduction of testimony in relation to the merits of the former case only served to confuse and obscure the issues in this case.

We are constrained to think, from the findings of the court and the opinion of the trial judge, which is sent up in the record, that the delinquencies of the father, J. I. Greenwood, were to a certain extent visited upon the appellant in this case. Stripped of all immaterial facts, the record shows that the blue roan mare was given to the appellant by his father for a birthday present on appellant's twenty-first birthday, viz., the 7th day of July, 1905. This was testified to by the father in a straightforward manner, also by the son, and also by the mother of the appellant, who stated that they had talked the matter over, that the son had been working faithfully for them, and that they had concluded to, and did, make him a present of this mare. The record also shows by the testimony of the father and the appellant, that the grey mare was sold to the appellant by his father on the 28th day of August, 1905; that the harness was bought by the appellant from a second-hand dealer, the money for the same being

paid by the appellant with funds he received for labor while working for his father, and that the wagon was bought by the appellant from a liveryman at Spokane, with his own money. The man who sold the harness, who seems to be entirely disinterested, and who only had a casual acquaintance with the appellant and his father, testified to the sale of the harness to the son, and the payment by him for the same, and that the transaction was with the son, who told him that if he would throw in a couple of old collars he would take it at the price offered. The collars were thrown in and the trade consummated. The man who sold the wagon to the son also testified to the purchase of the same by the son. There was no attempt by any one to dispute this testimony.

A single circumstance was proven which on first thought would seem to be inconsistent with the theory of ownership on the part of the son. This circumstance was that J. I. Greenwood gave a chattel mortgage on this property to a man by the name of Root, after the time that ownership of it was claimed by the appellant, making the usual affidavit in relation to the ownership thereof. In explanation of this, however, the testimony shows, that the appellant was with his father at the time this chattel mortgage was given; that the ownership of the son in the property was made known to Mr. Root, and it was agreed that if any more money were required the son would sign the mortgage with the father. Mr. Root, however, deeming the security ample, did not require this. This was testified to not only by J. I. Greenwood and the appellant, but also by Mr. Root. It seems that there was no special attention called to the conditions of the affidavit, but that J. I. Greenwood, in a rather careless manner, signed the same and executed the mortgage. The transaction was made without the assistance of any outsider, Mr. Root having prepared the mortgage himself, and while it is a practice which is not commendable and might be fraught with serious results to parties indulging in it, under all the circumstances as shown

by the testimony we do not think it was sufficient to over-balance the real testimony in relation to the ownership of the property.

The only other circumstance tending in any way to dispute the testimony of the appellant was that of the deputy sheriff, who testifies that, when he levied upon the property, the appellant claimed to own a certain brown team instead of the team in controversy. This was denied by the appellant, who stated that he simply told the deputy that he claimed one of the teams, not specially mentioning the team, the teams all being together at the camp where the levy was made. We think, under all the circumstances surrounding the levy and in consideration of the testimony of both parties, the deputy sheriff might easily have been mistaken as to what particular team was referred to by the appellant on that occasion.

The statutes of Idaho which were introduced, even if they had been legally introduced, have no bearing upon this question, for it is conceded that the contract of sale to this appellant, if any was made, was made prior to the time when the property was removed to Idaho, and prior to any indebtedness on the part of J. I. Greenwood to the respondent in this action. For the same reason Bal. Code, § 4578 (P. C. § 5345), which is to the effect that no bill of sale for the transfer of personal property shall be valid, as against existing creditors or innocent purchasers, where the property is left in the possession of the vendor, unless the said bill of sale be recorded in the auditor's office of the county in which such property is situated within ten days after such sale shall be made, is inapplicable, no debt existing at the time this sale and gift were alleged to have been made.

It was not inconsistent with the idea of ownership on the part of the appellant that his father gave him employment with his team upon the contract which he had taken from Mr. Corbin, nor was it inconsistent with the idea of ownership that when his father, whether justly or unjustly, left Idaho

and started for his home in Washington, he accompanied him on the trip, bringing his team with him; and whatsoever may have been the merits of the original controversy between J. I. Greenwood and the respondent Corbin, the undisputed testimony in this case in relation to the ownership of this property is so strong and convincing that, notwithstanding the judgment of the superior court on the same testimony, we cannot but deem it sufficient to establish legal ownership in the appellant.

The judgment will therefore be reversed, and the value alleged, viz., $475, having been established by uncontradicted testimony, the court will enter judgment for the appellant for the sum of $475, with legal interest from the date of the detention of the property.

HADLEY, C. J., ROOT, MOUNT, RUDKIN, and FULLERTON, JJ., concur.